

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable H. A. Jamison
Commissioner, Department of Banking
Austin - 14 - Texas

Dear Mr. Jamison:

Opinion No. O-6577

Re: Expenses incurred by special representatives of the State Banking Department in the matter of examining out-of-State institutions, under Article 1524a, Vernon's Civil Statutes.

Your letter requesting an opinion from this Department is as follows:

"There are two loan and brokerage companies classifiable as foreign corporations with a permit to do business under the provisions of Article 1524a, which are regularly examined by representatives of this Department. The annual examination of the two foreign corporations, one of which is located in Minneapolis, Minnesota, and the other in Springfield, Illinois, is approaching, hence this request for an opinion regarding the subject of expenses incurred by our special representatives.

"In this connection you are advised that it is necessary for two or more examiners to spend from two to four weeks in an examination of the corporation whose home office is in Minneapolis and about two weeks in an examination of the corporation whose home office is in Springfield, which time element causes our inquiry relative to expenses to be especially pertinent.

"The question that concerns us is whether or not our representatives may be reimbursed to the extent of expenses actually incurred by permitting the corporations involved to issue their expense

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable H. A. Jamison - page 2

warrants directly to the representative or repre-
sentatives, or does it follow that a bill for such
expenses must be directed to the corporations in-
volved and check made payable to this department
with the amount deposited in the same manner as
examination fees, penalties and other revenues
collected by this department with the examiners
or representatives being required to limit the
amount of their claims for reimbursal to $4.00 per
day, plus, of course, actual expenses incurred re
transportation charges. In this connection your
attention is invited to Section 2 of the aforesaid
Article.

"You are further advised that it has been a
practice of this Department to permit its repre-
sentatives to accept a check from the corporations
involved made payable to them in an amount repre-
senting actual expenses incurred for many years.
This practice perhaps based upon opinion No. 551 as
written by the then office counsel, the Honorable
Ocie Speer. We have today reread that opinion and
as indicated we feel the need of a clarifying ex-
pression re the subject in advance of a special as-
signment to examiners of this department embracing
the annual review as to the condition of the two
corporations involved. It follows, of course, that
in respect to the practice hereinabove mentioned no
claim for expenses has been filed with the State by
the examiners involved in connection with examina-
tions made, since as stated the corporations have
paid the full amount of the expenses incurred direct
to the examiners engaged in the annual reviews.

"You are further advised that this subject mat-
ter is of special concern to us by reason of the
fact that we have actual knowledge of the extraordi-
nary expenses which are involved in a trip beyond
the borders of our State of the nature herein des-
cribed. Thus if it should be held that such exam-
iners will be limited to an expense account of $4.00
per day - covering meals, accommodations and other
items, we shall feel disposed to give special consid-
eration to Section 10 of Article 1524a which has to
do with the acceptance on our part of examination re-
ports as made by other agencies. This, we think,
would be necessary in consideration of the thought

that to assign one of our examiners to make the examinations described on a basis of $4.00 per day allowance would be tantamount to requiring that examiner or examiners to absorb an out of pocket expense that would likely involve more than $200.00.

"Preceeding, therefore, to our second inquiry and in contemplation of the thought that it may be held that the $4.00 limitation applies and that the corporations involved must pay the department directly the amount of expenses incurred, is the language of Section 10 of the aforementioned article sufficiently broad in its stipulations as to justify this office in foregoing its practice to examine the corporations involved and accept in lieu thereof an over-all examination report as made by other agencies. We use the word 'over-all' deliberately for such reports do not give special attention to the position of an individual State, but rather as indicated embrace the general corporate position.

"Our own examiners, in respect to their examination of these corporations, being corporations that have issued and sold to Texas citizens their investment certificates in amounts aggregating several millions of dollars, concentrate particularly upon the controls that are established as to the corporate liability to Texas creditors and earmarked assets pledged for their protection, with a special verifying procedure made a part of each examination. Furthermore, as may be known to your own Judge Speer, the assets so pledged for the benefit of Texas creditors are held by the State Treasurer or a Texas trustee. In respect to the latter it is the policy of our examiners to obtain listings from the trustee before leaving for the home office of the corporation, this listing having to do with assets pledged and sufficiently complete as to enable thorough verification with the records maintained in Minneapolis. We merely mention this phase of the procedure to emphasize that any report which we might accept from another agency would fall far short of the completeness outlined above insofar as Texas creditors are concerned, and it occurred to us that this reference to our examination procedure might have some bearing in the consideration of the question involved in Section 10 of the Act."

Honorable H. A. Jamison - page 4

Section 1 of Article 1524a defines the class of cor-
porations embraced within the Loan and Brokerage Companies Act.

Section 2 is as follows:

"The Banking Commissioner of Texas shall ex-
amine or cause to be examined such corporations
annually or oftener if he deems it necessary.
Said corporation shall pay the actual traveling
expenses, hotel bills, and all other actual ex-
pense incident to such examination and a fee not
exceeding Twenty-five Dollars ($25) per day per
person engaged in such examination. If such cor-
poration had not sold in Texas its bonds, notes,
certificates, debentures, or other obligations
and does not offer for sale or sell in Texas its
bonds, notes, certificates, debentures or other
obligations, the Banking Commissioner of Texas,
in lieu of an examination shall accept a finan-
cial statement made on such form, containing such
information as he desires. Such fees, together
with any other fees, penalties or revenues col-
lected by the Commissioner pursuant to the pro-
visions of this Act or pursuant to other laws of
this State relative to corporations under the
supervision of the Banking Department, shall be
paid by the Commissioner to the State Treasurer
to the credit of the General Revenue Fund. The
expenses of examination and of the Commissioner
in enforcing the provisions of this Act shall be
paid upon the certificate of the Commissioner by
warrant of the Comptroller upon the State Treas-
ury."

Foreign corporations, such as those involved in your
inquiry, organized under the laws of another state, are per-
mitted to do business in Texas only as provided in Chapter 19
of the Revised Civil Statutes of Texas, and this necessarily
means they are to conduct such business in Texas in accordance
with and subject to the laws of Texas. 11 Tex. Jur., Corpora-
tions, § 178.

Such permitted corporations have been under the super-
vision of the Banking Department for many years, during which
time they have been regularly examined by the Department's ex-

aminers, where they have issued and sold their bonds, notes, certificates, debentures, or other obligations in Texas. The reason is not far to seek. It is the protection of the purchasers in Texas of the companies' obligations sold here. The examination is necessary to the proper maintenance of the securities put up by such companies, under Section 7 of the Act.

Such foreign corporation is specially made subject to examination of the Banking Commissioner of Texas, under penalty of forfeiture of its permit by the terms of Section 10 of the Act.

As pointed out by you, it has been the practice of the Banking Department, under its construction of the pertinent statutes, to collect from such out-of-state corporation all the fees prescribed by statute, and likewise the expenses such as travel, hotel, meals and the like, from out-of-state corporation, paying the fees into the State Treasury as prescribed by Section 2 of the Act, and applying the expenses to reimbursing the examiner for his actual expenditures in connection with such examination.

Opinion No. 551 by your office counsel referred to by you, is as follows:

"In the matter of supervision of Building Loan Associations and Loan & Brokerage Companies, you are sometimes called upon to go beyond the borders of the State, incurring extraordinary expenses and the question presents itself whether or not such expenses may be paid directly to you by the institution involved in the examination or investigation, as the case may be, or whether or not such matter is within the statute of fees and expenses. Undoubtedly it is the sound public policy, and therefore the law, that the compensation, whether salary or fees, of public officers is made matter of statute and the compensation there provided is, of course, conclusive of the compensation and exclusive of any other.

"In other words, a public official is entitled only to such salary or compensation as is clearly provided for in the law creating his office and fixing his compensation. See my Opinion 52 to the Banking Commissioner of date December 5, 1933.

Honorable H. A. Jamison - page 6

"The item of expenses of an official in-
curred by him in his official capacity, is in
essence public.  An official ordinarily cannot
perform his official duties outside the limits
of the State under whose authority he acts.
His acts beyond the territorial limits, there-
fore, being extra official, are not governed by
the law with respect to official duties.

"The principle is illustrated in the law
of rewards.  It is the generally accepted doc-
trine that when a public officer performs the
services for which a reward is offered, by acts
outside the scope and line of his duty, there
is no rule of public policy which forbids his
claiming the reward and hence he is entitled to
it.  Kasling vs. Morris, (Tex.) 9 S. W. 739,
Tobin vs. McComb, 156 S. W. 267, 54 C. J. 788,
Sec. 32.  The rule of public policy forbidding
extra compensation from private sources to pub-
lic officials for performing their official du-
ties, applies generally to rewards.  Hence the
analogy between rewards and expenses or compen-
sation is a good one.

"Undoubtedly, the law might impose upon a
state official the specific duty of performing
services beyond the State line, when of course,
the rule prohibiting extra compensation would
apply.  The real test, therefore, lies in the
nature of the services performed.  If the ser-
vices performed be outside the scope and duty of
the officer, he may accept private compensation
or expenses, but if such services be within the
scope of his official duty, he may not do so.

"There is involved in such matter a possi-
ble ethics that would forbid a public official
to accept compensation or expenses in connection
even with an act entirely beyond his official
duty, if such act is in the general nature of
his official duties, identical with that of com-
pensation and is governed by precisely the same
principle.

"By the General Appropriations Act of 1935
(General Laws 44th Leg. Reg. Sess. page 1061)

Honorable H. A. Jamison - page 7

your compensation as supervising examiner is definitely fixed and the same is to be paid only from fees or assessments collected from the institutions under supervision. Such fees and assessments from which your compensation is to be paid, are expressly appropriated by the Act. Therefore, your compensation, whether salary or expenses, is payable through the ordinary channels provided for the payment out of public funds.

"The rule of public policy would forbid, therefore, that you receive compensation or fees from any person or in any other way, with respect to your official duties than that specifically provided in the statute. It may happen and often does happen that you are called upon to perform an official service for which there is no specific compensation made in the law. Such a service is ex officio and is imposed upon you as a public officer, without compensation other than the general compensation attached to the office.

"The application of these principles would forbid your accepting any extra remuneration from any private institution for the performance of any official duty. But this advice is volunteered since you have not asked me any such question.

"I am of the opinion, however, that in so far as is involved the question of expenses incurred by you outside the State of Texas, the statutes of compensation have no application. In other words, the statute and rule of public policy deal with the performance of official duties, but this consideration is purely, I think, one of ethics and propriety involving to no extent whatever any question of regularity or legality. Personally, I can see no impropriety in an official accepting remuneration to the extent of actual expenses incurred by him in performing a service entirely beyond his actual official duties, even though such service be in the line of his ordinary official duties when within his State."

It is the opinion of this Department that the practice and policy heretofore followed by your Department is the proper one.

Section 2 of the Act, already quoted herein, requiring fees, penalties and revenues collected by the Commissioner to be paid to the State Treasurer to the credit of the General Revenue Fund, as has already been stated, has at all times heretofore been followed by your Department, as we understand the situation, but the actual and necessary expenses incurred by the examiner, such as have heretofore been mentioned, have not been thus paid into the Treasury, but have been applied by the examiner to the liquidation of his claim for expenses, and no claim or claims therefor have at any time been made against the Treasury or been paid by the Treasurer. This, we think, is in accordance and perfect keeping with the statutes, for such actual and necessary expenses are not "fees, penalties or revenues collected by the Commissioner", under the statutes.

The statutes, provisions of appropriation Acts, court decisions and departmental opinions with respect to expenses of out-of-state trips upon State business have nothing to do with the question under consideration, since such expenses are not paid out of the Treasury. No statute, appropriation rider, court opinion, departmental opinion, or public policy whatsoever is violated by the course of your Department here approved.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR